* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of the parties.
3. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
4. The employer-employee relationship existed between Plaintiff and Defendant-Employer on June 6, 2008, and Penn National Insurance Company was the compensation carrier on the risk at that time.
5. On June 6, 2008, Plaintiff suffered an admittedly compensable injury to her left knee. Defendants deny any injury to the spine, neck or back.
6. Plaintiff's average weekly wage was $381.87, which generates a compensation rate of $254.59.
7. The parties also stipulated to the following documentary evidence:
 (a) Industrial Commission Forms, marked Stipulated Exhibit No. 1.
 (b) Medical records, marked Stipulated Exhibit No. 2.
 (c) Recorded statement and additional medical records, marked Stipulated Exhibit No. 3.
 * * * * * * * * * * * EVIDENTIARY RULING
Plaintiff contends that Dr. Artigues' testimony is not admissible and should not be considered by the Commission because as part of her forensic psychiatric evaluation she *Page 3 
considered information provided by individuals who did not testify at the hearing and whom Plaintiff did not have an opportunity to cross-examine. In addition to reviewing the stipulated medical records and meeting with Plaintiff on May 28, 2010, Dr. Artigues conducted telephone interviews of Plaintiff's daughter and brother, as well as Defendant-Employer's general manager. Dr. Artigues testified that the collateral information she learned by conducting these interviews is the kind of information forensic psychiatrists typically rely upon in forming their opinions regarding diagnosis and causation.
Plaintiff's objection to the admission of Dr. Artigues' deposition testimony is hereby OVERRULED. An expert may rely upon matters outside the evidentiary record in forming her opinions regarding diagnosis and causation. Any testimony from Dr. Artigues regarding what she was told by these collateral sources was not offered or received to prove the truth of the matters asserted, but rather to show, in part, what she considered in forming her opinions.
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence before the Deputy Commissioner:
 a. Stipulated Exhibit #1: I.C. Forms
 b. Stipulated Exhibit #2: Medical Records
 c. Stipulated Exhibit #3: Additional Medical Records, Recorded Statement
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Defendants' Exhibit #1: Employer's Incident Report
 * * * * * * * * * * * *Page 4 ISSUES
The issues for consideration before the Full Commission are:
1. Whether plaintiff suffered a compensable injury to her neck and back by either accident or specific traumatic incident on 6 June 2008 or an injury due to an aggravation of a pre-existing mental condition?
2. Whether defendants unjustifiably denied medical treatment recommended by the authorized treating physicians?
3. Whether plaintiff is disabled as a result of any compensable, work-related injury or condition?
4. Whether plaintiff requires any additional medical treatment for any compensable, work-related injury or condition?
 * * * * * * * * * * *
Based upon the competent evidence adduced from the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was employed by Defendant-Employer as a knitter and had been so employed for approximately eight months as of June 6, 2008. Plaintiff had also worked for Defendant-Employer in the past, performing various limited assignments typically lasting approximately six weeks. From 1994 to 2007, Plaintiff held at least 20 different jobs, including employment with several temporary agencies.
2. Plaintiff was having attendance problems at Defendant-Employer prior to June 6, 2008. In March 2008 she received an oral warning for having five absences over the course of a *Page 5 
twenty-day period, and on June 3, 2008, she received a written warning for seven attendance issues in a forty-five day period.
3. On June 6, 2008, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer when she slipped on a spot of oil on the floor and fell, twisting her left knee and hitting her upper back on a machine. When Plaintiff reported the injury to her supervisor, she showed him a red spot on her back where she fell against the machine.
4. Plaintiff worked the remainder of her shift and then filled out an accident report. Plaintiff did not mention an injury to her back on the incident report and did not tell the knitting department manager, Steve Carmichael, that she had sustained an injury to her back. Plaintiff's testimony that she told Mr. Carmichael that she had injured her back and that she was not given enough time to complete the incident report is not accepted as credible.
5. Plaintiff was initially seen and evaluated on June 6, 2008 by Dr. Seema Bhotika at the Kernodle Clinic. Dr. Bhotika took a history from Plaintiff, whose only complaint was of left knee pain. Plaintiff did not report an injury to her back to Dr. Bhotika, and her testimony to the contrary is not accepted as credible.
6. On July 1, 2008, Plaintiff presented to Dr. Armour, an orthopedic surgeon at Kernodle Clinic, for evaluation of her left knee. Dr. Armour diagnosed left knee internal derangement and ordered an MRI, the results of which were normal in all respects. Because of Plaintiff's continued complaints of left knee pain, Dr. Armour recommended arthroscopic surgery and wrote Plaintiff out of work.
7. On August 7, 2008, Plaintiff presented to Dr. Stephen Lucey for a second surgical opinion. Based upon Plaintiff's complaints of catching, popping, and locking in the left knee, *Page 6 
Dr. Lucey diagnosed left knee internal derangement and concurred in Dr. Armour's recommendation for a diagnostic arthroscopy.
8. On August 31, 2008, Plaintiff presented to the Emergency Room at Alamance Regional Medical Center with complaints of situational anxiety due to recently being evicted. During this admission Plaintiff tested positive for cocaine and marijuana.
9. On September 3, 2008, Plaintiff underwent left knee arthroscopic surgery performed by Dr. Lucey. The only pathologic finding in the knee was a large plica. Plica is a normal shelf of tissue in the lining of a knee joint that can become enlarged and painful following trauma. Dr. Lucey removed the plica and in the course of doing so did not note any arthritis or other abnormality in the knee.
10. Despite some initial reported improvement, Plaintiff continued to complain of left knee pain at subsequent visits with Dr. Lucey. By October 7, 2008, Dr. Lucey was of the opinion that Plaintiff might be malingering because he was very confident that her knee had complete structural integrity. Plaintiff's complaints of pain were diffuse and on exam she did not exhibit any effusion or dystrophic changes. By March 2009 Dr. Lucey was diagnosing "recalcitrant pain of unknown etiology." He referred Plaintiff for an evaluation of her back to determine if that might be the source of her ongoing knee complaints, but he remained of the opinion that malingering was a possibility. At the time Dr. Lucey released Plaintiff, he did not think she was at MMI because of her pain complaints, and he did not address work restrictions.
11. On November 20, 2008, Plaintiff came under the care of Dr. Mark Phillips, an expert in pain management. While Plaintiff complained subjectively of a constant, pulsating, throbbing pain in her knee, upon examination she did not exhibit any swelling, erythema, instability or significant tenderness. She was able to fully flex her knee but reported significant *Page 7 
pain upon extension. Because Plaintiff tested positive for marijuana on the routine urine drug screen, Dr. Phillips was not able to initiate pain management treatment at that first visit. When Plaintiff returned to Dr. Phillips' office on December 5, 2008 for repeat drug screen, she asked for pain medication and began yelling when it was not immediately provided.
12. Plaintiff did not report low back pain to Dr. Phillips or his PA, Michael Love, until March 25, 2009, when she told Dr. Phillips that Dr. Lucey had mentioned the back to her as a possible source of her ongoing knee problem. She did not report thoracic back pain to Dr. Phillips or PA Love until June 5, 2009, following an incident at home when she experienced popping between her shoulder blades. Dr. Phillips' office note from that visit states that he did not have records of her reporting thoracic pain until recently, and that he was concerned that as soon as he examines one issue, "other issues are brought to bear." Plaintiff's testimony that she indicated on her initial pain diagram that she had back pain, but was told by PA Love to throw it away, is not accepted as credible.
13. When Plaintiff complained of back pain to Dr. Phillips in March and June 2009, he recommended MRI scans of the lumbar, thoracic and cervical spine. The results of the lumbar MRI showed minimal arthritis consistent with what would be expected of someone Plaintiff's age. The thoracic MRI was negative. The cervical MRI showed disc protrusions and spondylosis at C5-6 and C6-7.
14. Dr. Phillips discharged Plaintiff from his care on June 19, 2009, when she became verbally abusive with him and his staff. He recommended continued pain management treatment with another provider and gave Plaintiff a note stating that she should remain out of work. Throughout his treatment Dr. Phillips was of the opinion that Plaintiff needed to see a psychologist to learn pain coping skills. *Page 8 
15. On September 11, 2009, Plaintiff was seen by Dr. Cohen, an orthopedic surgeon who specializes in treatment of the spine. Plaintiff presented with complaints of pain in her left knee with swelling, pain in the upper part of her back, low back pain, numbness in her left arm, difficulty holding small objects, and numbness in her left leg with involuntary jumping. On exam Dr. Cohen did not appreciate any swelling in the knee and felt that her knee complaints were out of proportion to the objective findings. He also found no signs of complex regional pain syndrome. According to Dr. Cohen, Plaintiff's complaints regarding her back were not consistent with the MRI results. Overall, Dr. Cohen found no objective physiologic explanation for Plaintiff's complaints of pain, which he felt were exaggerated during the exam and indicated symptom magnification. He did not think Plaintiff required additional treatment, but he ordered an FCE, the results of which were invalid in 12 out of 12 categories tested and consistent with Dr. Cohen's observations. Dr. Cohen released Plaintiff to return to work full duty without restrictions on September 11, 2009 and assigned a 5 percent permanent partial disability rating to the left leg. He also referred Plaintiff to Dr. Hansen to rule out complex regional pain syndrome.
16. Dr. Hansen is a pain management expert with a degree in psychology. Dr. Hansen's exam of Plaintiff on May 4, 2010 suggested exaggerated pain behaviors. While Plaintiff did not exhibit the physical findings indicative of complex regional pain syndrome, Dr. Hansen ordered a bone scan to rule it out, and the results came back normal.
17. Plaintiff was also seen by Dr. Poehling, who based solely upon Plaintiff's subjective complaints diagnosed complex regional pain syndrome. However, when asked if he would agree with Dr. Cohen that Plaintiff could return to work without restrictions, Dr. Poehling responded that he "certainly wouldn't give her any restrictions," but he didn't think she could do it because of her psychological problems. *Page 9 
18. Plaintiff has a complicated psychological history. For years she has reported hearing voices in her head since the age of three. By last account she hears six distinct voices, which she claims tell her to do bad things. She testified that she hurt a teacher when she was in school. When she was evaluated by Dr. Levitt in conjunction with her application for Social Security Disability, she told him that she had been convicted of simple assault ten to fifteen times, and of driving without a license at least ten times. She claims that she was physically abused by her mother while she was growing up and that at the age of thirteen she became pregnant after she was raped by one of her older brother's friends. Yet, a separate report indicates that she became pregnant while in high school as a result of consensual sex with an older man whom she wanted to marry.
19. On April 4, 2010, Plaintiff was evaluated by Dr. Charles Burnett, a clinical psychologist with expertise in functional gastrointestinal disorders. Dr. Burnett reiterated throughout his testimony that he is not a medical doctor and therefore is not qualified to evaluate the adequacy of the medical findings regarding Plaintiff's alleged knee and back pain. Consequently, Dr. Burnett based his opinions on Plaintiff's subjective complaints. In that regard, Plaintiff told Dr. Burnett that her back problems started immediately after the June 6, 2008 injury, a fact which is not borne out by the medical records or expert medical testimony. Dr. Burnett diagnosed Plaintiff with major depression and a personality disorder, the latter of which he thought preexisted the June 6, 2008 injury. He also thought Plaintiff exhibited "Cluster B" personality traits which include borderline [personality], histrionic, antisocial, and narcissistic. According to Dr. Burnett, Plaintiff's June 6, 2008 injury did not aggravate or exacerbate her preexisting personality disorder, but it did significantly contribute to the development of her major depression. Based on Plaintiff's subjective complaints, Dr. Burnette *Page 10 
did not think Plaintiff was capable of returning to work. However, Dr. Burnette conceded that Plaintiff has engaged in a number of behaviors consistent with malingering and/or intentional feigning or exaggerating of her symptoms. He also acknowledged that an individual with Plaintiff's psychological symptoms is more likely, all other things being equal, to intentionally feign physical symptoms, and he noted a number of inconsistencies between Plaintiff's reports to him and other medical providers regarding her family, social and medical history and her treatment, school, employment, and other records.
20. Dr. Burnett acknowledged that people with antisocial personality disorder more frequently engage in deceitful and/or manipulative conduct in order to gain personal property or pleasure. He also noted that individuals with borderline personality disorder have fears of being alone or abandoned and tend to engage in behavior to gain the nurturance or concern of caretakers. Individuals with histrionic personality disorder tend to engage in attention-seeking behavior through dramatic and often colorful presentations, tend to like being the center of attention, and can engage in clinically dramatic behaviors in order to become the center of attention. Likewise, individuals with narcissistic personality disorder tend to have a need for constant attention which can be satisfied by being treated by medical providers or cared for by family members for injuries or ailments.
21. On May 19, 2010, Plaintiff presented for an evaluation with forensic psychologist Edward E. Landis. Plaintiff described to Dr. Landis her personal history, including hearing voices and various traumas that she experienced while growing up. Upon reviewing Plaintiff's medical records, Dr. Landis discovered some "dramatic discrepancies" and a number of inconsistencies involving very dramatic, engaging, and shocking accounts by Plaintiff of her past history which were not borne out by the records reviewed. *Page 11 
22. This kind of very dramatic storytelling is often seen in factitious disorders. Factitious disorder is a psychiatric diagnosis that involves the intentional production or exaggeration of symptoms, which can be physical, psychological, or a combination of both, for reasons particular to the person and due to their need for attention or care. Dr. Landis was of the opinion that Plaintiff's complaints of auditory hallucinations were most likely a factitious disorder with psychological symptoms. He also diagnosed Plaintiff with Cluster B personality disorders and an adjustment disorder, neither of which he felt were causally related to the June 6, 2008 injury.
23. On May 28, 2010, Plaintiff was evaluated by forensic psychiatrist Moira Artigues, who concluded that Plaintiff suffers from "severe personality disorder," specifically the narcissistic, antisocial, histrionic, and borderline personality disorders which make up Cluster B personality disorders. Like Dr. Landis, Dr. Artigues did not agree with Dr. Burnett's diagnosis of dissociative disorder because Plaintiff did not report or exhibit any disruption in her memory, identity or perception. Dr. Artigues also did not agree with Dr. Burnett's diagnosis of major depressive disorder, because in her opinion it cannot be diagnosed in the context of ongoing substance abuse as documented in Plaintiff's medical records, particularly when the patient is not a reliable historian. Dr. Artigues was unable to rule out malingering and ultimately concluded that Plaintiff had feigned a pain disorder to meet some dependency needs which are characteristic of her lifelong personality disorder, which was neither caused, aggravated nor accelerated by the June 6, 2008 injury.
24. On June 6, 2008, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer when she fell, twisting her left knee and hitting a spot on her upper back on a knitting machine. *Page 12 
25. As a result of the June 6, 2008 accident, Plaintiff suffered an aggravation of a pre-existing left knee condition which ultimately required surgery to remove a large plica. However, the injury to the left knee resolved following surgery, such that it had complete structural integrity by October 7, 2008. Plaintiff's complaints of severe left knee pain after that date were intentionally feigned by Plaintiff and are not accepted as credible. The competent, credible medical evidence establishes that Plaintiff's ongoing complaints of left knee pain are not causally related to the injury of June 6, 2008. Moreover, there is no evidence of record that Plaintiff requires further treatment for her left knee at this time.
26. While Plaintiff's upper back did impact the machine in one spot when she fell, she did not sustain an injury to her neck or mid or upper back as a result of that incident. With regard to the low back, Plaintiff's complaints are not consistent with the objective findings on MRI, nor are they consistent with those of someone who is aggravating degenerative changes in the lumbar spine by use of an altered gait. Plaintiff's complaints of neck pain and lower, middle and upper back pain are not causally related to the June 6, 2008 injury.
27. Plaintiff does not suffer from complex regional pain syndrome as a result of the June 6, 2008 accident.
28. Based upon the greater weight of the expert medical testimony, the Full Commission finds that Plaintiff does not suffer from major depression or any other psychological disorder that was caused, aggravated or accelerated by the June 6, 2008 injury by accident. Plaintiff suffers from a myriad of personality disorders which pre-existed the date of injury and were neither caused, aggravated nor accelerated by the June 6, 2008 injury. Therefore, Dr. Phillips' recommendation for psychological or psychiatric treatment to assist with pain-coping skills was likewise not related to the June 6, 2008 injury. *Page 13 
29. With regard to her compensable left knee injury, Plaintiff regained the capacity to earn the same wages she was earning at the time of the injury in the same employment on September 11, 2009. To the extent that Plaintiff may have been disabled since that date, her disability from September 11, 2009 to the present is not causally related to the June 6, 2008 injury.
30. Neither party raised the issue of Plaintiff's entitlement to compensation for permanent partial disability pursuant to N.C. Gen. Stat. § 97-31(15), nor does it appear that Plaintiff has exercised her right to a second opinion on the rating pursuant to N.C. Gen. Stat. § 97-27(b).
31. Defendants did not defend this matter without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer on June 6, 2008. N.C. Gen. Stat. § 97-2(6).
2. As a result of the June 6, 2008 accident, Plaintiff suffered an aggravation of a preexisting left knee condition which ultimately required surgery by Dr. Lucey and pain management treatment by Dr. Phillips. Defendants are responsible for paying the medical expenses incurred by Plaintiff for this treatment, to the extent that these bills have not already been paid. N.C. Gen. Stat. § 97-25.
3. Defendants have proven that as of September 11, 2009, Plaintiff was no longer disabled due to the June 6, 2008 accident and compensable left knee injury. Plaintiff was *Page 14 
temporarily and totally disabled from July 1, 2008 to September 11, 2009 and is entitled to temporary total disability compensation at the rate of $254.59 per week for this period. N.C. Gen. Stat. § 97-29. Plaintiff was released to work without any restrictions on September 11, 2009.
4. Defendants have proven by the greater weight of the competent, credible medical evidence that Plaintiff's back and psychiatric conditions are not causally related to the June 6, 2008 injury, and that any disability Plaintiff may have experienced after September 11, 2009 is related to these conditions and therefore is not compensable. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005).
5. Plaintiff failed to prove by a preponderance of the evidence that as a consequence of the work-related injury she has been incapable of work in any employment since September 11, 2009.Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). Accordingly, Defendants may stop payment of temporary total disability benefits effective September 11, 2009.
6. Defendants did not defend this action in an unreasonable manner or without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E. 2d 575 (1982).
 * * * * * * * * * * *
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD *Page 15 
1. Plaintiff's claim for neck and back injury along with mental and psychological conditions is DENIED.
2. To the extent Defendants have to continued to pay Plaintiff temporary total disability compensation, after denial of the Form 24, Defendants may terminate payments to Plaintiff effective September 11, 2009.
3. Defendants shall pay all medical expenses Plaintiff incurred for treatment of Plaintiff's compensable left knee injury when said medical bills have been submitted according to established Industrial Commission procedures.
4. Each side shall pay its own costs.
This the ___ day of July, 2011.
 S/___________________ TAMMY R. NANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1